FILED

2016 Feb-10  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **DANIEL BRYAN KELLEY,** | ) |
| **as Personal Representative of the** | ) |
| **Estate of Renee Nicole Kelley,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:** _____ |
| | ) |
| | ) **Removed from the Circuit Court of** |
| | ) **Talladega County, Alabama** |
| | ) **Civil Action No.: 61-CV-2015-900444** |
| **DAVITA ACCOUNTABLE CARE** | ) |
| **SOLUTIONS, LLC d/b/a DAVITA** | ) |
| **SYLACAUGA DIALYSIS** | ) |
| **CENTER, et al.,** | ) |
| | ) |
| **DEFENDANTS.** | ) |

---

## NOTICE OF REMOVAL

---

COMES NOW Defendant, **DVA Renal Healthcare, Inc. d/b/a Sylacauga Dialysis**, improperly designated in Plaintiff's Complaint as "DaVita Accountable Care Solutions, LLC d/b/a DaVita Sylacauga Dialysis Center", and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, files this Notice of Removal of the foregoing cause from the Circuit Court of Talladega County, Alabama, to the United States District Court for the Northern District of Alabama, Eastern Division.  As grounds for removal, Defendant shows unto the Court the following:

1.      Plaintiff, Daniel Bryan Kelley, initiated this civil action against Defendant on or about December 23, 2015, in the Circuit Court of Talladega County, Alabama, Civil Action No. 61-CV-2015-900444.  Pursuant to 28 U.S.C. § 1446(a), copies of all pleadings, as well as copies of all process and other papers on file in the record of the state court action, which are within the possession, custody and control of Defendant, are attached herewith as Exhibit "1".

2.      Defendant files this Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446, and asserts federal diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332.  This action could have originally been brought in this Court pursuant to 28 U.S.C. § 1332.  This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1), as complete diversity of citizenship exists between the Parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      Pursuant to 28 U.S.C. § 1332(a)(1), complete diversity exists between the parties properly joined and served in this Action.  Pursuant to 28 U.S.C. § 1332(c)(2), Defendant asserts, upon information and belief, Plaintiff is a resident and citizen of the State of Alabama.  (Ex. 1, Doc. 2 at ¶¶ 1-3).  Although incorrectly named in the Complaint, for diversity purposes, DaVita Accountable Care Solutions, LLC is a foreign company, organized and existing under the laws of the State of Delaware, with a principal place of business in the City and County of Denver,

Colorado.  DaVita Accountable Care Solutions, LLC is owned and managed by its sole member, Village Health DM, LLC.  Village Health DM, LLC is a foreign company, organized and existing under the laws of the State of Delaware, with a principal place of business in the City and County of Denver, Colorado.  Thus, DaVita Accountable Care Solutions, LLC is a citizen of the States of Delaware and Colorado for the purposes of diversity jurisdiction.  *See* 28 U.S.C. § 1332(c)(1). Should Plaintiff amend the Complaint to properly name DVA Renal Healthcare, Inc. d/b/a Sylacauga Dialysis as the proper defendant, for diversity purposes, DVA Renal Healthcare, Inc. is a foreign corporation, organized and existing under the laws of the State of Tennessee, with a principal place of business in Williamson County, Tennessee.  Thus, DVA Renal Healthcare, Inc. is a citizen of the State of Tennessee for the purposes of diversity jurisdiction.  *See* 28 U.S.C. § 1332(c)(1).  Pursuant to 28 U.S.C. § 1441(b)(1), the citizenship of fictitious defendants named in Plaintiff's Complaint "shall be disregarded" in determining whether this Action is removable based on diversity jurisdiction.  The only named and served defendant as of the filing date of this Notice of Removal is DaVita Accountable Care Solutions, LLC, a non-citizen of the State of Alabama, therefore complete diversity of citizenship exists.

4.      Pursuant to 28 U.S.C. § 1332(a)(1), the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  The longstanding federal rule for determining the amount in controversy is to examine the plaintiff's

complaint. *See, e.g., Lindsay v. American General Life & Accident Ins. Co.*, 133 F. Supp. 2d 1271, 1275 (N.D. Ala. 2001) (citations omitted). Here, however, Plaintiff does not specify in the Complaint the total amount of damages he seeks against Defendant. The Eleventh Circuit precedent provides that, when a plaintiff makes an unspecified damages demand in state court, "a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement.'" *Roe v. Michelin N. Am., Inc.*, 613 F. 3d 1058, 1061 (11th Cir. 2010) (*quoting Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996)). In some cases, this burden will require the removing defendant to provide additional evidence, but in other cases "it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when 'the complaint does not claim a specific amount of damages.'" *Roe*, 613 F. 3d at 1061 (*quoting Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (citations omitted)).

5.     The Eleventh Circuit Court of Appeals has stated that, if a defendant alleges removability is facially apparent from the complaint, "the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden." *Id.* at 1061. The district court is not bound by the plaintiff's representations, and does not have to assume the plaintiff is best able to evaluate the amount of damages

sought.  613 F. 3d at 1061 (*citing Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744,

771 (11th Cir. 2010)).  The Eleventh Circuit Court of Appeals further stated:

> **Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable.** Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint establishes the jurisdictional amount." Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

*Id.* at 1061-62 (citations omitted) (emphasis added).  The rationale for this rule is in

part to prevent plaintiffs from defeating a court's statutory right to hear a case

through artful pleading that does not specify the value of the claimed damages.  *Id.*

at 1064.

6.     Recent cases are helpful in determining the amount in controversy

where, as here, a plaintiff fails to make a specific damages demand in the complaint.

One such case explained the impact of amended 28 U.S.C. § 1446, stating "[w]hen

Congress enacted this most recent amendment to § 1446, it did not intend to require

the court to which the case is removed to do more than to exercise reasonable

judgment, based on the allegations in the complaint, and other undisputed facts."

*Smith v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1333, 1334 (N.D. Ala. 2012).

In *Smith*, the court went on to state that where the complaint does not contain an *ad

damnum* clause, "the court is allowed reasonable deductions and extrapolations." *Id.*

at 1335.  The *Smith* court further stated "[t]his court is informed and verily believes" Congress amended § 1446 "to slow down, if not to prevent," the remand of diversity cases "where there is no *ab* (sic) *damnum* clause, but where the parties and the court know from their exercise of good sense and experience that the claim exceeds $75,000."  868 F. Supp. 2d at 1335.  Perhaps more importantly, the *Smith* court stated the following:

> The court is willing to go so far as to inform plaintiffs like Smith, who want to pursue claims against diverse parties in a state court seeking unspecified damages of various kinds, such as punitive damages and emotional distress, **must in their complaint formally and expressly disclaim any entitlement to more than $74,999.99, and categorically state that plaintiff will never accept more.** Otherwise, a plaintiff will find herself in a federal court, which is now saddled by Congress with a new and heavy burden.

*Id.* (emphasis added).  Finally, the *Smith* court noted in a case such as this one, if the defendant had waited for limited discovery in state court to prove the plaintiff's claim exceeded $75,000, the defendant would be facing a motion to remand for untimely removal rather than for lack of subject-matter jurisdiction.  *Id.* at 1334-35.

7.    Plaintiff does not make a specific demand for damages in his Complaint.  Plaintiff further fails to disclaim the right to, or acceptance of, damages exceeding $74,999.99.  However, the preponderance of the evidence shows it is facially apparent from the Complaint that the amount in controversy more likely than not exceeds $75,000.

8.      In this wrongful death claim, Plaintiff asserts a claim against Defendant under the Alabama Medical Liability Act.  (Ex. 1, Doc. 2 at ¶ 4).  Plaintiff asserts Defendant's employees breached the applicable standard of medical care owed to the decedent, Renee Kelley, by failing to provide her with proper medical care and that said breach proximately caused her death.  (*Id.* at ¶ 17).  More specifically, Plaintiff claims that, during the decedent's dialysis treatment with Defendant, the decedent was administered doses of Epogen.  (*Id.* at ¶¶ 7-8).  Plaintiff claims "aggressive treatment with Epogen make the patient significantly more susceptible to heart problems or death." (*Id.* at ¶ 9).  Plaintiff alleges that on December 30, 2013, the decedent was released from treatment by Defendant even though the decedent's blood pressure was 192/118, her pulse was 106 and she was experiencing shortness of breath.  (*Id.* at ¶ 11).  Plaintiff claims the decedent was pronounced dead within an hour and a half of being released from treatment, and the decedent's death was caused by ventricular fibrillation and electrolyte abnormalities.  (*Id.* at ¶¶ 12-13).  Plaintiff claims Defendant breached the applicable standard of care by failing to: 1) administer proper medication dosages, 2) monitor the decedent's symptoms, and 3) properly assess the decedent's need for additional medical care, before she was released from treatment.  (*Id.* at ¶ 16).  Consequently, Plaintiff seeks damages against Defendant for the decedent's wrongful death.

9.     When ascertaining the amount in controversy in a particular case, "state law is relevant to this determination insofar as it defines the nature and extent of the right plaintiff seeks to enforce.  This includes applying state law rules regarding the applicable measure of damages and the availability of special and punitive damages." *Lindsay*, 133 F. Supp. 2d at 1277.  The goal of Alabama's wrongful death statute "is to prevent death, not to compensate for the loss of human life, which Alabama believes possesses a value 'beyond measure.'"  *Roe*, 613 F.3d at 1065 (citations omitted).  Consequently, a plaintiff in a wrongful death claim is limited to the recovery of punitive damages only.  *Id.*  As the *Roe* court noted, "[t]his limitation, however, does not mean that plaintiffs' recoveries must be modest. In fact, the Wrongful Death Act 'attempts to preserve human life by making homicide *expensive*.'"  *Id.*

10.     The Eleventh Circuit Court of Appeals set forth 5 factors to be considered in calculating a damage award under Alabama's Wrongful Death Act:

(1) the finality of death, (2) the propriety of punishing the defendant, (3) whether the defendant could have prevented the victim's death, (4) how difficult it would have been for the defendant to have prevented the death, and (5) the public's interest in deterring others from engaging in conduct like the defendant's.

*Id.* (*citing Tillis Trucking Co., Inc. v. Moses*, 748 So. 2d 874, 889 (Ala. 1999)).  The court further stated "the worse the defendant's conduct was, the greater the damages

should be." *Roe*, 613 F.3d at 1065 (*citing Ala. Power Co. v. Turner*, 575 So. 2d 551, 554-55 (Ala. 1991); *A.P.J.I.* 11A.28 (2d Ed.)).

11.    Here, when analyzing the value of Plaintiff's claim using judicial experience and common sense, this Court can reasonably deduce or infer Plaintiff's claims as pled exceed the minimum jurisdictional requirement based on the above factors.  As to the first factor, the finality of the decedent's death is considered based on Alabama law that values human life "beyond measure."  *See Roe*, 613 F.3d at 1065-66.  As to the second factor, there is nothing in the Complaint which suggests punishing Defendant would be inappropriate.  *See Roe*, 613 F.3d at 1066.  With regard to the third and fourth factors, this Court can also reasonably infer from Plaintiff's Complaint that he will argue Defendant could have easily prevented the decedent's death by administering proper dosages of Epogen, monitoring the decedent's symptoms during treatment, and assessing her need for additional medical care before discharge based on her symptoms.

12.    Finally, with regard to the fifth factor, courts have found the amount in controversy requirement is met in wrongful death cases in which the plaintiff asserts the defendant wantonly caused the wrongful death of a human.  *See, e.g. Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 998 (M.D. Ala. 2009) (holding amount in controversy met where plaintiff asserts defendants wantonly caused loss of human life because wanton conduct "involves a high degree of culpability, making the need

for punishment and deterrence all the more exigent"), *aff'd*, 613 F.3d 1058 (11th Cir. 2010); *Edwards v. G.A. Braun, Inc.*, 2013 U.S. Dist. LEXIS 24229, at *8-9, 2013 WL 656259 (S.D. Ala. Feb. 1, 2013) (holding it readily deducible from the complaint that the amount in controversy exceeded $75,000 where action alleged the defendants negligently and/or wantonly took human life); *Marchant v. Mane*, 2012 U.S. Dist. LEXIS 87158, *7-8, 2012 WL 2389331 (M.D. Ala. June 25, 2012) (holding analysis of *Roe* factors and application of judicial experience and common sense support finding it was readily apparent the plaintiff's claim as pled more likely than not exceeded the minimum jurisdictional requirement where it was alleged the defendants negligently and/or wantonly allowed a pack of known and vicious dogs to go at large and maul a minor child to death); and *Nelson v. Whirlpool Corp.*, 668 F. Supp. 2d 1368, 1375-76 (S.D. Ala. 2009) (holding "[f]ew things would defy common sense more completely than insisting that a suit for wantonly killing a human being . . . does not place more than $75,000 in controversy.").

13.    Although Plaintiff's Complaint does not specifically indicate whether he intends to allege Defendant wantonly caused the decedent's death, there is information contained in the Complaint from which this Honorable Court could reasonably deduce or infer Plaintiff will likely assert Defendant wantonly caused the loss of human life.  For example, in describing fictitious party defendants, Plaintiff references "[t]hose corporations, firms, entities or individuals responsible for the

10

negligence and/or wantonness complained of herein or who in any way contributed to the death of Renee Nicole Kelley."  (Ex. 1, Doc. 2 at ¶ 6; *see also* Ex. 1, Doc. 2 at ¶ 2).  Furthermore, this Court could reasonably infer or conclude Plaintiff will likely argue the jury should increase its punishment of Defendant based on its size and national scope in order to have a deterring effect on a large corporate entity. Consequently, if liability and damages are proven according to the law controlling the theories set forth in Plaintiff's Complaint, a jury could reasonably return a verdict in excess of the $75,000 jurisdictional minimum.

14. Defendant does not admit or contend it is liable to Plaintiff, and does not admit or contend Plaintiff's damages necessarily exceed $75,000, exclusive of interest and costs.  Instead, Defendant reasonably believes that, based upon the legal theories asserted in the Complaint and the applicable Alabama law governing damages under those theories, Plaintiff will seek and ask a jury to return a verdict in an amount, sum, or value in excess of $75,000, exclusive of interest and costs.

15. Furthermore, Defendant cannot be deprived of its right to remove this cause by Plaintiff's failure to demand a specific monetary figure in the Complaint. *See Steele v. Underwriter's Adjusting Co., Inc.*, 649 F. Supp. 1414 (M.D. Ala. 1986); *see also Roe*, 613 F.3d at 1064 (holding "when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation

11

that the value of the claim is indeterminate. Otherwise, a defendant could wrongly be denied the removal to which it is entitled."). If Plaintiff disputes the amount in controversy exceeds the jurisdictional requisite, Defendant requests leave to conduct discovery to determine the extent of Plaintiff's claim to damages or, in the alternative, Defendant requests this Court require Plaintiff to "formally and expressly disclaim any entitlement to more than $74,999.99, and categorically state Plaintiff will never accept more". *See Smith*, 868 F. Supp. 2d at 1334.

16.    This Notice of Removal is filed in the United States District Court for the Northern District of Alabama, Eastern Division, within the time allowed by law for the removal of actions to the United States District Courts. Defendant was served with the Summons and Complaint on or about January 12, 2016. (Ex. 1, Doc. 4). This Notice of Removal is timely because it is filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). Accordingly, the prerequisites for removal pursuant to 28 U.S.C. § 1441 are met.

17.    Without waiver of any defenses or objections including, but not limited to, improper process, improper service of process, improper venue, and lack of personal jurisdiction, Defendant submits this Notice of Removal.

12

18.     Pursuant to 28 U.S.C. § 1446(d), Defendant shows a copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Talladega County, Alabama.  Further, Defendant represents to this Court that a copy of this Notice of Removal is also being served upon counsel for Plaintiff.

Respectfully submitted,

s/ Lea Richmond, IV
Lea Richmond, IV (asb-8479-l74r)
Carrie H. Bates (asb-4638-e59h)
Attorneys for Defendant

**OF COUNSEL:**

**CARR ALLISON**
100 Vestavia Parkway
Birmingham, Alabama 35216
Telephone:  (205) 822-2006
Facsimile:  (205) 822-2057
E-mail:     lrichmond@carrallison.com
            cbates@carrallison.com

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the <u>10th</u> day of <u>February</u>, 2016, the foregoing

document was electronically filed with the Clerk of Court using the CM/ECF

system, which will send notification of said filing to the following:

F. Page Gamble
**F. PAGE GAMBLE, P.C.**
300 Vestavia Parkway
Suite 2300
Birmingham, Alabama 35216
Telephone:  (205) 795-2078
E-Mail:        page@gamblelaw.net
Attorney for Plaintiff


s/ Lea Richmond, IV
OF COUNSEL

14